**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PATTRICK SANTIAGO,<br>Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES, LLC,<br>Defendant. | Civil Action No. ____________<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND JURY TRIAL DEMAND**

Plaintiff, Pattrick Santiago, by and through his undersigned counsel, brings this Complaint against Defendant, Amazon.com Services, LLC, and in support thereof avers as follows:

## I. PRELIMINARY STATEMENT

1. This is a civil action for damages and other legal and equitable relief brought by Plaintiff, Pattrick Santiago ("Mr. Santiago" or "Plaintiff"), against Defendant, Amazon.com Services, LLC ("Amazon" or "Defendant"), arising from unlawful discrimination and retaliation that Plaintiff experienced during his employment with Defendant, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. ("PHRA"), and Pennsylvania common law.

## II. JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, in that this action arises under the laws of the United States, specifically Title VII.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims brought under the PHRA and Pennsylvania common law pursuant to 28 U.S.C. § 1367(a), in that the state law claims arise from the same case or controversy as Plaintiff's federal claims and derive from a common nucleus of operative fact.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant conducts business within this District and because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District, at Defendant's facility located at 2455 Blvd. of the Generals, Norristown, Pennsylvania 19403.

## III. PARTIES

5. Plaintiff, Pattrick Santiago, is an adult individual who resides at 625 Brown Road, Myers Town, Pennsylvania 17067.

6. Defendant, Amazon.com Services, LLC, is, upon information and belief, a limited liability corporation authorized to conduct business in the Commonwealth of Pennsylvania, maintaining a facility located at 2455 Blvd. of the Generals, Norristown, Pennsylvania 19403, and, upon information and belief, employed approximately 500,000 or more employees during the period relevant to this Complaint.

7. At all times relevant hereto, Defendant was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b) and the PHRA, 43 P.S. § 954(b).

8. At all times relevant hereto, Plaintiff was an "employee" of Defendant within the meaning of Title VII and the PHRA.

## IV. ADMINISTRATIVE PREREQUISITES

9. Plaintiff timely filed a Charge of Discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC"), Philadelphia District Office, dual-filed with the Pennsylvania Human Relations Commission ("PHRC"), Charge No. 530-2026-09272, on or about August 19, 2026, alleging discrimination on the basis of age, disability, and race, national origin, and retaliation.

10. On or about September 1, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights, notifying Plaintiff of his right to sue Defendant on EEOC Charge No. 530-2026-09272. This action is filed within ninety (90) days of Plaintiff's receipt of that Notice, satisfying 42 U.S.C. § 2000e-5(f)(1) as to Plaintiff's Title VII claims.

11. Plaintiff has satisfied, or is otherwise excused from, all administrative prerequisites and conditions precedent to the institution of this action under the Title VII and the PHRA.

## V. FACTUAL ALLEGATIONS

12. Mr. Santiago is a Hispanic man and a veteran of the United States military, and at all relevant times was, a member of a class protected from discrimination because of race and national origin, under Title VII. See McDonald v. Santa Fe Trail Transportation Co., 427 U.S. 273 (1976).

13. On or about February 2, 2023, Defendant hired Mr. Santiago as a Senior Maintenance Technician at its facility located at 2455 Blvd. of the Generals, Norristown, Pennsylvania 19403.

14. Mr. Santiago was qualified for his position with approximately twenty (20) years of electrical and maintenance experience.

15. Mr. Santiago was the only Hispanic employee in the maintenance department and was the only technician in the department with substantial electrical training and experience.

16. Mr. Santiago performed his job duties successfully and received no write-ups or discipline of any kind during his employment with Defendant.

17. When Mr. Santiago was hired, his co-workers and management did not know he was Hispanic. After his national origin became common knowledge, the manner in which Mr. Santiago was treated changed.

18. Mr. Santiago was treated as though he were less educated, less intelligent, and less technically capable than his non-Hispanic coworkers, notwithstanding his approximately twenty years of electrical and maintenance experience and his technical qualification.

19. Mr. Santiago was excluded from meetings and workplace communications in which other employees participated and he was denied meaningful training opportunities and was not provided information made available to other employees that was necessary or useful to the performance of his position and became increasingly isolated from coworkers and management.

20. Amazon regularly assigned Mr. Santiago responsibilities beyond the ordinary duties of his position including those responsibilities performed at a management level but simultaneously denied him promotions or transfers to positions of advancement.

21. Mr. Santiago raised the issue of advancement with his manager who told him he first needed to "earn trust" and prove himself before he would be considered for promotion but was not advised of an objective performance or technical deficiency that would account for this additional requirement.

22. Upon information and belief, similarly, situated non-Hispanic employees were not required to satisfy the same heightened and subjective condition before being considered for advancement.

23. Amazon subsequently terminated Mr. Santiago on February 21, 2026 based upon an alleged violation of lockout/tagout (LOTO) and pont of task procedures, this despite the fact that Mr. Santiago never received adequate training concerning the specific LOTO and point-of-task requirement that Amazon later claimed he violated.

24. Mr. Santiago was not trained that the particular task at issue, under the circumstances presented, required him to independently initiate or implement the LOTO procedure that Amazon subsequently identified as the basis for his termination.

25. Amazon asserted that Mr. Santiago nevertheless had an independent obligation to determine whether LOTO was required for the task.

26. To Mr. Santiago's knowledge, however, Amazon has not identified or produced a signed training acknowledgment, training record, written procedure provided to Mr. Santiago, competency assessment, or other documentation establishing that Mr. Santiago had been instructed that the particular task at issue required LOTO under the circumstances presented.

27. Upon information and belief, Amazon did not subject similarly situated non-Hispanic employees to the same treatment with respect to access to training, workplace information, application of safety procedures, investigation of workplace incidents, discipline, promotion, transfer, and termination.

28. Amazon's termination of Mr. Santiago occurred following the foregoing course of treatment.

29. Before his Hispanic identity became known, Mr. Santiago personally heard employees make derogatory remarks concerning Hispanic workers and after his Hispanic identity became known, Mr. Santiago was treated as less educated, less intelligent, and less capable despite his extensive technical experience; excluded from meetings and workplace communications; denied meaningful training opportunities; denied information provided to other employees; isolated from coworkers and management; denied promotions and transfers for which he was qualified; and told that he was required to "earn trust" and prove himself before being considered for advancement.

30. Mr. Santiago complained about the discrimination to Cynthia Colon, the HR manager on multiple occasions, specifically regarding the disparaging remarks regarding Hispanic workers and being treated as if he were less educated, less intelligent and less capable than non-Hispanic workers.

31. Mr. Santiago further lodged a complaint with Ms. Colon after a manager yelled at Mr. Santiago that he was beneath him (the manager).

32. When his complaints were repeatedly ignored, Mr. Santiago filed an ethics complaint against Ms. Colon for closing his complaints without investigation.

33. Mr. Santiago complained to his manager "Roy" about the heightened and subjective requirement that he needed to "earn trust" in order to be promoted even thought he worked there for over three (3) years doing manager work on the nightshift team without a manager's title or pay.

34. Mr. Santiago complained to Cynthia Colon, HR Manager, after observing unsafe practices in the form of unfinished, unsafe LOTO boxes that could be locked in the open position.

35. When his complaints were dismissed by Ms. Colon, Mr. Santiago filed a complaint with OSHA concerning the unsafe practices regarding the unfinished, unsafe LOTO boxes which could be locked in the open position, which remains open under #ECN131182.

36. Shortly after filing the complaint with OSHA, Mr. Santiago was terminated over the phone on his day off.

37. Amazon terminated Mr. Santiago for allegedly failing to comply with LOTO and point-of-task requirements despite not having adequately trained him concerning the specific requirement upon which it relied.

38. Further, the lock involved in the incident belonged to another technician, and that technician understood the machine to be fully locked out.

39. To Mr. Santiago's knowledge, Amazon has not identified documentation establishing that it trained him that the task at issue required the procedure Amazon subsequently claimed he violated.

40. Additional statements made during Mr. Santiago's termination concerned his status as a veteran of the United States military where Amazon's representative repeatedly referenced Mr. Santiago's military service and veteran status.

41. Amazon's representative stated, in substance, that Mr. Santiago was being held to a higher standard than other employees because he was a veteran and repeatedly directed military terminology toward Mr. Santiago during the termination communication in a manner that was unrelated to the alleged LOTO violation.

42. Mr. Santiago's veteran status did not alter the duties of his Senior Maintenance Technician position, the applicable LOTO or point-of-task requirements, or the employment standards applicable to other employees performing comparable work and yet Amazon expressly referenced his veteran status in explaining why a higher standard was being applied to him during the termination process.

43. Based upon the foregoing, Mr. Santiago alleges that Amazon subjected him to different and less favorable terms and conditions of employment because of his Hispanic national origin, including with respect to workplace treatment, access to meetings and information, training, promotional and transfer opportunities, application of employment standards, discipline, and termination.

44. Mr. Santiago further alleges that Amazon's stated LOTO and point-of-task justification does not account for the circumstances surrounding his termination, including Amazon's failure to adequately train him concerning the specific requirement upon which it relied; the absence, to Mr. Santiago's knowledge, of documentation establishing that he received such training; the fact that the lock involved belonged to another technician; that technician's understanding that the machine was fully locked out; and the different treatment Mr. Santiago experienced after his Hispanic identity became known.

45. Mr. Santiago therefore alleges that Amazon discriminated against him because of his Hispanic national origin in violation of Title VII of the Civil Rights Act of 1964, as amended, including by subjecting him to disparate terms and conditions of employment, denying him training and advancement opportunities, applying employment and disciplinary standards differently, and terminating his employment.

46. Mr. Santiago further preserves all claims available under applicable law arising from Amazon's express consideration of his military service and veteran status in connection with the standards applied to him and the termination of his employment.

47. As a direct and proximate result of Defendant's unlawful conduct, Mr. Santiago has suffered and continues to suffer lost wages and employment benefits, emotional distress, humiliation, embarrassment, mental anguish, and other compensatory damages.

**COUNT I**
**DISCRIMINATION BASED ON RACE AND NATIONAL ORIGIN IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000e-16**

48. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

49. Mr. Santiago, as a Hispanic man, is a member of a class protected under Title VII from discrimination because of race and national origin.

50. Mr. Santiago was qualified for his position with Defendant based on his twenty years of electrical and maintenance experience and performed his job duties satisfactorily.

51. Mr. Santiago personally heard employees make derogatory remarks concerning Hispanic workers and after his Hispanic identity became known.

52. Once it was known to coworkers and management that Mr. Santiago was Hispanic, he was treated as less educated, less intelligent, and less capable despite his extensive technical experience.

53. Mr. Santiago was excluded from meetings and workplace communications; denied meaningful training opportunities; denied information provided to other employees; isolated from coworkers and management; denied promotions and transfers for which he was qualified.

54. Mr. Santiago was told that he was required to "earn trust" and prove himself before being considered for advancement.

55. Similarly situated non-Hispanic employees were not required to satisfy the same heightened and subjective condition before being considered for advancement.

56. Defendant's conduct toward Mr. Santiago, including the harassment described above and the adverse employment actions taken against him, was motivated in whole or in part by Mr. Santiago's race and national origin.

57. Employees who were not Hispanic were treated more favorably than Mr. Santiago under similar circumstances.

58. Defendant's conduct as described above constitutes unlawful discrimination because of race and national origin, in violation of Title VII.

59. Defendant engaged in the discriminatory practices described above with malice or with reckless indifference to Mr. Santiago's federally protected rights, entitling Mr. Santiago to punitive damages, subject to the limitations of 42 U.S.C. § 1981a.

60. As a direct and proximate result of Defendant's violation of Title VII, Mr. Santiago has suffered damages, including but not limited to lost wages and benefits, emotional distress, humiliation, and other compensable harm.

## COUNT II
## RACE-BASED HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII
## 42 U.S.C. § 2000e-16

61. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

62. Plaintiff is a Hispanic man and is protected from discrimination because of race and national origin, under Title VII.

63. Throughout Plaintiff's employment, Defendant's co-workers, managers and supervisors subjected him to unwelcome harassment because of his actual race and/or national origin.

64. The harassment included statements by Defendant that Plaintiff needed to "earn trust" and prove himself before he could be considered for advancement while similarly situated non-Hispanic employees were not subjected to the same heightened and subjective conditions before being considered for advancement.

65. Mr. Santiago was excluded from meetings and workplace communications in which other employees participated.

66. Plaintiff was denied meaningful training opportunities and was not provided information made available to other employees that was necessary for the performance of his position and was increasingly isolated from coworkers and management.

67. Non-Hispanic employees working in the same department were not subjected to the same exclusions and restrictions.

68. The harassment was not accidental, isolated, or based on ordinary workplace disagreements. It occurred repeatedly throughout Plaintiff's employment and was directed at him because he is Hispanic.

69. The cumulative harassment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an intimidating, hostile, and abusive working environment.

70. Plaintiff subjectively perceived the working environment as hostile and abusive, and a reasonable person in Plaintiff's position would likewise have perceived the environment as hostile and abusive.

71. The harassment detrimentally affected Plaintiff by causing humiliation, anxiety, emotional distress, embarrassment, and deterioration in the conditions of his employment.

72. Defendant knew or should have known of the harassment because managers and supervisors participated in it by subjecting Plaintiff to heightened and subjective conditions not placed on non-Hispanic employees.

73. The conduct of Defendant's managers and supervisors is imputable to Defendant.

74. Defendant's conduct created and maintained a hostile work environment because of Plaintiff's race and national origin, in violation of Title VII, 42 U.S.C. § 2000e-16.

75. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages subject to 42 U.S.C. § 1981a.

76. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages and benefits, emotional distress, humiliation, embarrassment, mental anguish, and other compensable harm.

**COUNT III**
**RETALIATION IN VOILATION OF TITLE VII, 42 U.S.C. § 2000e-3(a)**
**COUNT VII**

77. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

78. Mr. Santiago was engaged in activity protected under Title VII by filing internal ethics complaints concerning the discriminatory harassment he was experiencing.

79. Mr. Santiago was engaged in activity protected under Title VII by filing internal and external complaints regarding unsafe practices.

80. Defendant knew of Mr. Santiago's protected activity.

81. Shortly after Mr. Santiago's internal ethics complaints were closed and his complaint regarding unsafe practices was filed, Defendant took materially adverse action against Mr. Santiago by terminating his employment.

82. The temporal proximity between Mr. Santiago's protected activity and Defendant's adverse actions, together with other circumstances described above, constitutes unlawful retaliation in violation of Title VII.

83. As a direct and proximate result of Defendant's retaliation, Mr. Santiago has suffered damages, including but not limited to lost wages and benefits, emotional distress, humiliation and other compensable harm.

**COUNT IV**
**VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT, 43 P.S. § 951 ET SEQ.**

84. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

85. Defendant is an "employer," and Mr. Santiago is an "employee," within the meaning of the PHRA, 43 P.S. § 954.

86. Defendant's conduct described above — including its harassment and discrimination against Mr. Santiago on the basis of race and national origin also constitutes unlawful discriminatory practices under the PHRA, 43 P.S. § 955.

87. As a direct and proximate result of Defendant's violations of the PHRA, Mr. Santiago has suffered damages, including but not limited to lost wages and benefits, emotional distress, humiliation, and other compensable harm.

**COUNT IV**
**DISCRIMINATION AND HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE PHRA**
**43 P.S. § 955(a)**

88. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

89. Defendant is an "employer," and Plaintiff is an "employee" and "individual," within the meaning of the PHRA.

90. Plaintiff was protected from discrimination under the PHRA because of his race and national origin.

91. Plaintiff was qualified for his position and satisfactorily performed its essential functions.

92. Defendant discriminated against Plaintiff because of his race and national origin by subjecting him to adverse employment actions, including heightened and subject conditions none of which were required of non-Hispanic employees.

93. Defendant also subjected Plaintiff to unwelcome harassment because of his Hispanic origin including, treating him as less educated, less intelligent, and less technically capable than non-Hispanic employees; excluding him from meetings and workplace communications; denying him meaningful training opportunities exclusion from workplace meetings, and other hostile and demeaning treatment.

94. The discriminatory harassment was sufficiently severe or pervasive, considered under the totality of the circumstances, to alter the conditions of Plaintiff's employment and create an intimidating, hostile, and abusive working environment.

95. Plaintiff subjectively perceived the environment as hostile and abusive, and a reasonable person in Plaintiff's position would likewise have perceived it as hostile and abusive.

96. Defendant knew or should have known of the discriminatory harassment because managers and supervisors participated.

97. Defendant failed to conduct a meaningful investigation, take appropriate corrective action, discipline the responsible personnel, or prevent the discriminatory harassment from continuing.

98. Employees outside Plaintiff's protected classes were not subjected to comparable harassment, ridicule, exclusion, or termination under similar circumstances.

99. Plaintiff's protected characteristics were motivating and determinative factors in Defendant's treatment of him.

100. Any legitimate, nondiscriminatory reason offered by Defendant is false and pretextual and was offered to conceal unlawful discrimination.

101. Defendant's conduct constitutes unlawful discrimination and the creation of a hostile work environment in violation of the PHRA, 43 P.S. § 955(a).

102. As a direct and proximate result of Defendant's violations of the PHRA, Plaintiff suffered lost wages and benefits, emotional distress, humiliation, embarrassment, mental anguish, and other compensable harm.

## COUNT V
## RETALIATION IN VIOLATION OF THE PHRA
## 43 P.S. § 955(D)

103. Plaintiff incorporated by reference each of the foregoing paragraphs as though fully set forth herein.

104. Defendant is an "employer," and Plaintiff is an "employee," within the meaning of the PHRA, 43 P.S. § 954.

105. Section 955(d) of the PHRA prohibits an employer from discriminating against an employee because the employee opposed a practice forbidden by the PHRA or made a complaint or otherwise exercised rights protected by the PHRA.

106. Plaintiff engaged in activity protected by the PHRA when he complained to Defendant's managers about discrimination, harassment, and disparate treatment based on his race and national origin.

107. Plaintiff reasonably and in good faith believed that the discriminatory and harassing conduct he reported was prohibited by PHRA.

108. Plaintiff also engaged in protected activity under the PHRA when he notified Defendant and OSHA regarding the unfinished, unsafe LOTO boxes which could be locked in the open position.

109. Defendant knew or should have known of Plaintiff's protected activity because Plaintiff made his discrimination complaints directly to management and informed Defendant's supervisory and managerial personnel of the heightened and subjective discrimination against Plaintiff.

110. Rather than investigate Plaintiff's complaints, correct the discriminatory conduct or appropriately address his concerns regarding unsafe procedures, Defendant dismissed his concerns, closed his complaints without meaningful investigation, and permitted the hostile treatment to continue.

111. After Plaintiff engaged in these protected activities, Defendant subjected him to materially adverse actions, including continued harassment and exclusion, false accusations concerning the LOTO procedures and termination.

112. These actions were sufficiently adverse to dissuade a reasonable employee from reporting discrimination or otherwise exercising rights protected by the PHRA.

113. A causal connection exists between Plaintiff's protected activity and Defendant's adverse actions, as demonstrated by the close temporal proximity between those events, Defendant's dismissive and hostile response to his complaints and his termination.

114. Plaintiff performed his job satisfactorily, remained qualified for his position, and had not received any discipline or corrective action that would legitimately explain Defendant's adverse actions.

115. Defendant would not have subjected Plaintiff to the foregoing materially adverse actions but for his opposition to unlawful discrimination, his internal complaints, his complaint to OSHA and his exercise of rights protected by the PHRA.

116. Any legitimate, nonretaliatory reason offered by Defendant for its treatment of Plaintiff is false and pretextual and was offered to conceal Defendant's retaliatory motive.

117. Defendant's conduct constitutes unlawful retaliation in violation of the PHRA, 43 P.S. § 955(d).

**118.** As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer lost wages and employment benefits, emotional distress, humiliation, embarrassment, mental anguish, and other damages recoverable under the PHRA.

**COUNT VI**
**WRONGFUL TERMINATION IN VIOLATION OF PENNSYLVANIA PUBLIC POLICY**
**(Pennsylvania Common Law)**

119. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

120. Although Pennsylvania generally adheres to the doctrine of at-will employment, an employer may not discharge an employee where the discharge violates a clear mandate of Pennsylvania public policy. *See Geary v. U.S. Steel Corp.*, 319 A.2d 174 (Pa. 1974); *Shick v. Shirey*, 716 A.2d 1231 (Pa. 1998).

121. The public policy supporting such a claim must be grounded in the Constitution, statutes, regulations, or judicial decisions of the Commonwealth of Pennsylvania. *See McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283 (Pa. 2000).

122. The Pennsylvania Worker and Community Right-to-Know Act, 35 P.S. § 7301 *et seq.* ("PWCRA"), prohibits an employer from discharging or otherwise discriminating against an employee because the employee has filed a complaint or exercised rights protected by that statute.

123. The PWCRA's antiretaliation provision closely parallels the antiretaliation provision of the federal Occupational Safety and Health Act of 1970 ("OSH Act"), 29 U.S.C. § 660(c)(1), which prohibits an employer from discharging or in any manner discriminating against an employee because the employee has filed any complaint under or related to the OSH Act.

124. The Pennsylvania General Assembly intended the PWCRA to be read in conjunction with the OSH Act and the federal regulations promulgated thereunder.

125. Accordingly, courts applying Pennsylvania law have held that the PWCRA establishes a clear public policy of the Commonwealth prohibiting an employer from terminating an employee in retaliation for filing a complaint under either the PWCRA or the OSH Act, such that an employee discharged for making an OSHA complaint may maintain a common law claim for wrongful termination in violation of public policy. *See Beck v. CNO Fin. Grp., Inc.*, No. 17-4300, 2018 U.S. Dist. LEXIS 99722 (E.D. Pa. June 14, 2018); *Wetherhold v. RadioShack Corp.*, 339 F. Supp. 2d 670, 682 (E.D. Pa. 2004) ("the public policy of the Commonwealth of Pennsylvania is violated if an employer terminates an employee for engaging in protected activity under either of those state or federal laws").

126. Among the regulations promulgated under the OSH Act is the Control of Hazardous Energy (Lockout/Tagout) standard, 29 C.F.R. § 1910.147, which requires employers to establish and implement energy control procedures and to use lockout devices that hold energy-isolating devices in a safe or "off" position, so that employees servicing or maintaining machinery are protected from the unexpected energization, start-up, or release of stored energy.

127. As a Senior Maintenance Technician, Mr. Santiago serviced and maintained machinery at Defendant's Norristown facility and was required to use Defendant's LOTO equipment and procedures in the course of that work.

128. Mr. Santiago observed that LOTO boxes in use at Defendant's facility were unfinished and unsafe in that they could be locked in the open position, meaning that equipment could appear to be locked out when it was not secured against energization, exposing maintenance personnel to a risk of serious injury or death.

129. Mr. Santiago reported these unsafe LOTO conditions to Defendant's HR Manager, Cynthia Colon.

130. After Ms. Colon dismissed his concerns, Mr. Santiago filed a complaint with the Occupational Safety and Health Administration ("OSHA") on or about [DATE] concerning the unfinished, unsafe LOTO boxes that could be locked in the open position, which complaint remains open under No. ECN131182.

131. Mr. Santiago's internal safety report and his OSHA complaint constitute protected activity under the OSH Act, 29 U.S.C. § 660(c), and conduct protected by the public policy of the Commonwealth of Pennsylvania as expressed in the PWCRA.

132. Defendant knew of Mr. Santiago's safety complaints because he made them directly to Defendant's HR Manager. Upon information and belief, Defendant also knew or believed that Mr. Santiago was the source of the OSHA complaint, which concerned the same LOTO boxes about which he had complained internally.

133. Shortly after Mr. Santiago filed his OSHA complaint, on or about February 21, 2026, Defendant terminated his employment by telephone while he was on his day off.

134. Defendant's stated reason for the termination, an alleged failure to comply with LOTO and point-of-task procedures, concerned the very subject matter of Mr. Santiago's safety complaints.

135. Defendant's stated reason is pretextual. Mr. Santiago had no prior discipline; Defendant never adequately trained him that the particular task at issue required him to independently initiate or implement the LOTO procedure Defendant later cited; to Mr. Santiago's knowledge, Defendant has identified no training record, acknowledgment, written procedure, or competency assessment establishing such training; the lock involved in the incident belonged to another technician; and that technician understood the machine to be fully locked out.

136. The close temporal proximity between Mr. Santiago's OSHA complaint and his termination, Defendant's reliance on an alleged LOTO violation shortly after Mr. Santiago reported Defendant's own LOTO deficiencies to OSHA, and the weakness of Defendant's stated justification demonstrate that Defendant terminated Mr. Santiago because of his safety complaints, including his OSHA complaint.

137. Defendant had no separate, plausible, and legitimate reason for terminating Mr. Santiago's employment.

138. Defendant's termination of Mr. Santiago in retaliation for reporting unsafe LOTO conditions to OSHA violates a clear mandate of the public policy of the Commonwealth of Pennsylvania and constitutes wrongful termination under Pennsylvania common law.

139. The OSH Act does not provide employees a private right of action for retaliatory discharge, and no Pennsylvania statute provides Mr. Santiago an adequate remedy for his termination in retaliation for his OSHA complaint.

140. This Count is based on Mr. Santiago's safety complaints, including his OSHA complaint, and is pleaded independently of, and in the alternative to, his claims of discrimination and retaliation under Title VII and the PHRA.

141. Defendant's conduct was outrageous and was undertaken with an evil motive or with reckless indifference to Mr. Santiago's rights, entitling Mr. Santiago to punitive damages under Pennsylvania law.

142. As a direct and proximate result of Defendant's wrongful termination of his employment, Mr. Santiago has suffered and continues to suffer lost wages and employment benefits, emotional distress, humiliation, embarrassment, mental anguish, and other damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Pattrick Santiago, respectfully requests that this Court enter judgment in his favor and against Defendant, Amazon.com Services, LLC, on all Counts of this Complaint, and award the following relief:

(a) Back pay and lost benefits, together with prejudgment interest;

(b) Front pay and/or reinstatement to a comparable position;

(c) Compensatory damages for emotional distress, humiliation, and other non-pecuniary losses;

(d) Punitive damages, to the extent permitted by law;

(e) All damages and remedies available under the PHRA, 43 P.S. § 962;

(g) Reasonable attorneys' fees, expert fees, and costs of suit pursuant to 29 U.S.C. § 626(b), 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 12205, and 43 P.S. § 962(c.2);

(h) Pre- and post-judgment interest as allowed by law; and

(i) Such other and further relief as this Court deems just and proper.

**JURY TRIAL DEMAND**

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable in this action.

Respectfully submitted,

*/s/ Joseph F. Leeson, III*______
Joseph F. Leeson, III, Esquire
PA Attorney I.D. No. 328520
Leeson & Leeson
70 East Broad Street, P.O. Box 1426
Bethlehem, PA 18016
jleeson@leeson-law.com
Attorney for Plaintiff
Dated: November 23, 2026